UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**07 CV 3691**

------------------------------------------------------------x

MAURICE SCOTT,

                Plaintiff,

**JUDGE DANIELS**

  – against –

CITY OF NEW YORK; Commissioner MARTIN F. HORN;
Chief of Department CAROLYN THOMAS; Deputy
Commissioner RICHARD R. WHITE; Captain MARK
DANIELS, Shield # 522; Officer LAWRENCE BRADFORD,
Shield # 14610; Officer BRUCE BOYD, Shield # 14356;
Officer ANTHONY TURNER, Shield # 4899; Officer
JEFFREY REDONDO, Shield # 16094; Officers JOHN/JANE
DOES # 1-5,

                Defendants.

------------------------------------------------------------x

**COMPLAINT AND JURY DEMAND**

**ECF CASE**


RECEIVED MAY 09 2007 U.S.D.C. S.D.N.Y. CASHIERS

## PRELIMINARY STATEMENT

1.     This is a civil rights action brought by plaintiff Maurice Scott ("Mr. Scott" or "plaintiff") for damages pursuant to 42 U.S.C. § 1983. On June 8, 2006, while in the custody of the New York City Department of Correction ("DOC" or "the Department"), and confined to the George Motchan Detention Center at Rikers Island ("GMDC"), Mr. Scott was brutally beaten by staff members of the Emergency Services Unit ("ESU"), a division of the Department, during the course of a search of Mr. Scott's housing area, in violation of his rights under the Fourteenth Amendment to the United States Constitution. Among the serious injuries that Mr. Scott suffered as a result of this June 8, 2006 beating were a left orbital floor fracture and multiple bruises to his face and back. Mr. Scott now seeks redress against the DOC employees who beat him, their supervisors and the City of New York.

## JURISDICTION AND VENUE

2. This action arises under the Fourteenth Amendment to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3)-(4) and 1367(a).

4. The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

5. Mr. Scott demands trial by jury in this action.

## PARTIES

6. Maurice Scott is a citizen of the United States and resided at Rikers Island in Bronx County at the time when these events occurred. At the time of the beating, Mr. Scott was detained at GMDC. Mr. Scott currently resides in New York County, New York.

7. Defendant City of New York ("City") is a municipal corporation which, through its Department of Correction ("DOC" or the "Department"), operates a number of detention jails. The Department, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to the use, reporting and investigation of force by uniformed staff, and access to medical and other program services mandated by local law and court orders. In addition, senior officials in the Department are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten Department policies or customs. The Department is also responsible for the

2

appointment, training, supervision, and conduct of all DOC personnel, including the defendants referenced herein.

8.     At all times relevant hereto, Martin Horn was the Commissioner of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Horn, as Commissioner of DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the defendants referenced herein. As Commissioner, defendant Horn is also responsible for the care, custody, and control of all inmates housed in the Department's jails. As Commissioner, Horn was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails. In addition, at all relevant times, defendant Horn was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York. Defendant Horn is sued in his individual capacity.

9.     At all times relevant hereto, Carolyn Thomas was the Chief of Department of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law. As Chief of Department, she was the highest ranking uniformed member of the department, and was responsible for the supervision, oversight, and discipline of the uniformed security staff in all the Department jails. She was also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, Thomas is provided on a daily basis with reports of applications of

force, allegations of unreported use of force, and other breaches of security in Department jails. Defendant Thomas is sued in her individual capacity.

10. At all times relevant hereto, Richard R. White was the Deputy Commissioner of the Department, Investigation Division. As Deputy Commissioner, his responsibilities included supervising the investigation of any and all incidents in which any employee of the Department used force against any inmate, or is alleged to have used force, and recommending Department discipline against staff believed to have violated Department policies and rules including those concerning use of force. Defendant White was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails. Defendant White is sued in his individual and official capacities.

11. At all times relevant hereto, Defendant Mark Daniels, Shield # 522, was a captain within the DOC and assigned to the ESU, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Daniels worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Scott. Defendant Daniels is sued in his individual capacity.

12. At all times relevant hereto, Defendant Lawrence Bradford, Shield # 14610, was a correction officer within the DOC and assigned to the ESU, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Bradford worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Scott. Defendant Bradford is sued in his individual capacity.

13. At all times relevant hereto, Defendant Bruce Boyd, Shield # 14356, was a correction officer within the DOC and assigned to the ESU, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Boyd worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Scott. Defendant Boyd is sued in his individual capacity.

14. At all times relevant hereto, Defendant Anthony Turner, Shield # 4899, was a correction officer within the DOC and assigned to the ESU, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Turner worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Scott. Defendant Turner is sued in his individual capacity.

15. At all times relevant hereto, Defendant Jeffrey Redondo, Shield # 16094, was a correction officer within the DOC and assigned to the ESU, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Redondo worked at Rikers Island at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Scott. Defendant Redondo is sued in his individual capacity.

16. At all times relevant hereto, Correction Officers John/Jane Does # 1-5 (collectively referred to herein as the "Doe Defendants"), whose actual names and shield numbers plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe" and "Jane Doe," were officers of DOC, acting in the capacity of agents, servants, and employees of defendant City, within the

scope of their employment as such, and acting under color of state law. On information and belief, Defendants John/Jane Does # 1-5 worked for the ESU at Rikers Island on June 8, 2006 and participated in the assault on plaintiff that took place on June 8, 2006. Defendants John/Jane Does # 1-5 are sued in their individual capacities.

17. John/Jane Does # 1-5, as well as defendants Horn, Thomas, White, Daniels, Bradford, Boyd, Turner and Redondo are collectively referred to as the "Individual Defendants."

## STATEMENT OF FACTS

**New York City's Jails: A History of Abuse**

18. For decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous and unconstitutional use of excessive force by staff at individual facilities in the large, multi-jail New York City Department of Correction.[1]

19. For example, *Sheppard v. Phoenix*, 210 F. Supp.2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed abuse of prisoners and its cover-up sufficiently serious to merit criminal prosecution.

20. *Ingles v. Toro*, 438 F. Supp.2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the widespread practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed

---

[1] *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) [Correction Institution for Men]; *Jackson v. Montemagno*, CV 85-2384 (AS) (E.D.N.Y.) [Brooklyn House of Detention]; *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) [Bellevue Prison Psychiatric Ward]; *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) [Central Punitive Segregation Unit].

significant numbers of credible excessive force complaints from prisoners who have been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice and supervision of agency staff and investigators, and changes in the Department's use of force policy.

21.  Through DOC's elaborate reporting system, the Supervisory Defendants – Horn, Thomas and White – were aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force resulting in serious injuries to inmates and have failed to take sufficient steps to curb these abuses.

22.  The Department and the Supervisory Defendants have also been made aware of the near-refusal of the Department to bring disciplinary charges against its officers to promote institutional reform.

23.  Through all these cases and Department reports, DOC and its supervisors have been made aware of the widespread practice by DOC staff of using excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the *de facto* refusal of the Department to bring effective disciplinary charges against its officers to promote institutional reform.

24.  DOC and its supervisors have also been made aware that the Emergency Services Unit ("ESU") – a special unit operating in all the jails – has been persistently identified with using brutal force and causing prisoners serious injury. The incident involving Mr. Scott is one of a pattern of use of force incidents where inmates alleged excessive force by ESU staff for which they suffered serious injuries.

25. The Department and the Supervisory Defendants cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure of the Department to take sufficient measures to investigate and discipline this abuse.

26. The Department has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails and in particular within the ESU. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

**The ESU Incident on June 8, 2006**

27. On or about June 8, 2006, at approximately 7:30 p.m., Mr. Scott was in his housing area in GMDC when the ESU arrived to conduct a search.

28. Mr. Scott and the other inmates were instructed to form a line and face the cell area. Mr. Scott complied with these instructions.

29. A member of the ESU called Mr. Scott's name and instructed him to face the cell area and walk toward his cell. Again, Mr. Scott complied with these instructions.

30. Upon arriving at his cell, Mr. Scott was instructed to enter the cell, remove his clothes and squat.

31. There was no reasonable suspicion to believe that Mr. Scott was concealing a weapon or other contraband; nevertheless, he complied with these instructions.

32. Mr. Scott was then allowed to get dressed and was ordered to remove the sheets from his bed.

33. Mr. Scott was complying with these instructions, but Defendant Officer Bradford still ordered him to hurry up. Mr. Scott complied.

34. Then, without any justification or provocation, Defendant Officer Bradford punched Mr. Scott in the face, striking him at his left eye.

35. Mr. Scott fell to the floor. While he was still lying on the floor, Defendant Officer Bradford and at least two other officers continued to punch Mr. Scott in the face and body. A fourth officer was standing at the cell door witnessing this assault. Upon information and belief, the officers in the cell and at the door were Defendant Officers Boyd, Turner, and Redondo. Upon information and belief, Defendant Daniels witnessed the entire incident and did nothing to stop the assault.

36. To protect himself, Mr. Scott crawled under his bed. While under his bed, the defendant officers stepped on his hands and yelled at Mr. Scott to "stop resisting." Mr. Scott was not resisting.

37. The defendant officers sprayed Mr. Scott with a chemical agent, lifted his bed, and handcuffed Mr. Scott.

38. While handcuffed from the back and still lying on the floor, the defendant officers punched Mr. Scott in his upper body and stepped on his back.

39. At no time prior to or during this assault did Mr. Scott make any aggressive gesture toward any officer or supervisor or present any risk of harm to any officer or supervisor.

40. None of the defendants intervened to prevent the assault on, or prevent further injury to, Mr. Scott.

41. By failing to intervene in order to stop this assault, these defendants demonstrated a deliberate indifference to a substantial risk of serious harm to Mr. Scott.

42. Mr. Scott was later taken to the showers to be decontaminated from the chemical agent.

43. Eventually, a captain observed him and took him to the facility medical clinic where it was determined that Mr. Scott needed emergency medical health care, and he was sent to Elmhurst Hospital Center.

44. As a result of this assault, Mr. Scott suffered serious physical and emotional injuries, including a left orbital floor fracture, multiple contusions and bruises to his face and upper body and pain to his back, wrists, left eye, jaw and head.

45. Mr. Scott continues to suffer physical and emotional injuries as a result of this assault.

46. At no time did Mr. Scott assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant the repeated application of blows. Mr. Scott did not provoke his beating nor did he conduct himself in any manner that would warrant any use of force, much less the force actually used. The Individual Defendants acted sadistically and maliciously and demonstrated deliberate indifference toward Mr. Scott's rights and physical well-being.

47. Mr. Scott timely filed a written notice of claim with the Comptroller's Office at 1 Centre Street, New York, New York.

48. More than 30 days have passed since the filing of the notice of claim, and the City has not settled the action.

49. This action has been commenced within one year after the happening of the events upon which the claims are based.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Fourteenth Amendment
### (Against All Individual Defendants)

50. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

51. By reason of the foregoing, and by assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, or failing to prevent other Individual Defendants from doing so, defendants deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment of the United States Constitution to be free from gratuitous and excessive force.

52. Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and the Fourteenth Amendment of the United States Constitution.

53. Defendants Horn, Thomas and White knew and/or know that the pattern of physical abuse described above existed in the City jails prior to and including the time of the assault on plaintiff. Their failure to take measures to curb this pattern of brutality constitutes an acquiescence in the known unlawful behavior of their subordinates. The prevalence of these

practices and general knowledge of their existence at the time of plaintiff's beating, and the failure of these defendants to take remedial action despite the fact that the misuse of force in City jails had been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of the inmates in their care and custody, including the inmate named as a plaintiff in this action. These defendants' conduct has been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged in this complaint.

54. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Fourteenth Amendment
### (Against Defendant City)

55. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

56. Defendant City, through DOC, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of staff brutality and retaliation by the ESU at the time of plaintiff's beating. This widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice or custom and led to plaintiff's assaults.

57. By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which plaintiff was subjected to a brutal beating, defendant City has deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to,

12

rights guaranteed under the Fourteenth Amendment to be free from gratuitous and excessive force.

58. As a direct and proximate result of the policy, practice and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

### AS AND FOR A THIRD CLAIM FOR RELIEF
**Assault and Battery**
(Against All Defendants)

59. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

60. In assaulting, battering, and threatening plaintiff, the Individual Defendants, acting in their capacities as DOC officers, and within the scope of their employment, each committed a willful, unlawful, unwarranted, and intentional assault and battery upon plaintiff.

61. The assault and battery by these defendants was unnecessary and unwarranted in the performance of their duties as DOC officers and constituted an unreasonable and excessive use of force.

62. Defendants, their officers, agents, servants, and employees were responsible for plaintiff's assault and battery. Defendant City, as employer of each of the Individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

63. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

13

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### Negligent hiring/training/retention of
### Employment Services
### (Against Defendant City)

64. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

65. Defendant City, through the DOC, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

66. Upon information and belief, all of the Individual Defendants were unfit and incompetent for their positions.

67. Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that the Individual Defendants were potentially dangerous.

68. Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

69. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff requests that the Court grant the following relief jointly and severally against defendants:

1. Compensatory damages in an amount to be determined at trial for the physical and psychological injuries sustained by Mr. Scott as a result of the events alleged herein.

2. Punitive damages against the Individual Defendants in an amount to be determined at trial.

3. An order awarding plaintiff reasonable attorneys' fees, together with the costs of this action.

4. Such other further relief as the Court may deem appropriate.

Dated: May 9, 2007
New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

*/s/ Jonathan S. Abady*
Jonathan S. Abady (JA 5147)
Sarah Netburn (SN 4223)
Katherine R. Rosenfeld (KR 8525)
75 Rockefeller Plaza
New York, New York 10019
(212) 763-5000

THE LEGAL AID SOCIETY
Jonathan S. Chasan (JC 9018)
Mary Lynne Werlwas (MW 6403)
199 Water Street, 6th Floor
New York, New York 10038
(212) 577-3530
*Counsel for Plaintiff*